IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WERNER AIR FREIGHT, LLC                                                              PLAINTIFF

v.                                                            CIVIL ACTION NO. 1:16-CV-60-SA-DAS

PERRY MORSEY, QUALITY TIME
LOGISTICS, INC., KATHY MORSEY,
MICHAEL G. MORSEY, LEE CONTRACTING, INC.,
LEE TRANSPORTATION INC.,
AND FICTITIOUS DEFENDANTS A-Z                                                    DEFENDANTS

MEMORANDUM OPINION

Presently before the Court is Lee Transportation, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [16]. After reviewing the motion, responses, pertinent law and authorities, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff Werner Air Freight, LLC ("Werner") is a Mississippi limited liability company with its principal place of business in Alcorn County, Mississippi. Werner is engaged in the business of providing and brokering logistics, delivery, and freight services throughout the United States and worldwide. Werner alleges that Defendants Perry Morsey, Kathy Morsey, and Michael Morsey, who did business as KJM Air Logistics and Quality Time Logistics ("Morsey Defendants") are former employees/agents of Werner and were tasked primarily with managing the account of Defendant Lee Transportation, Inc. ("LTI"), a Werner customer. The Morsey Defendants are Michigan residents, as is LTI, which is both incorporated in Michigan and has its principal place of business located in the same state. LTI is not registered to do business in Mississippi, nor has a registered agent for service in the state. LTI does not own, control, or lease

real property or any assets in Mississippi, nor does LTI maintain a post office address, telephone number, or bank account within the state.

On October 29, 2015, Werner claims it discovered the Morsey Defendants had violated its contractual agreement with Werner by engaging in conduct specifically prohibited in the "Agent Non-Solicitation Agreement" between the Morsey Defendants (namely Perry Morsey) and Werner. As a result, Werner terminated Perry Morsey. On November 6, 2015, Werner alleges it discovered LTI was communicating with Perry Morsey about Perry brokering loads for LTI. In response, Werner sent LTI notification of the Non-Solicitation Agreement which prohibited Perry from engaging any of Werner's clients for a period of one year after his termination. Werner followed up with subsequent email notices to LTI on November 13, 2015, December 25, 2015, and December 26, 2015. On December 30, 2015, Werner alleges it discovered LTI was disregarding the Agreement by wrongfully sending Werner's business to Perry Morsey.

In March of this year, Werner filed suit against the Morsey Defendants and LTI in the Circuit Court of Alcorn County, Mississippi alleging claims for misappropriation of trade secrets, conversion, tortious interference with contract, tortious interference with business relations, common law unfair competition, and negligent supervision, as well as a federal claim under the Lanham Act. Werner alleges that as a result of LTI's "collusion" with the Morsey Defendants, LTI has stolen over $400,000.00 in business from Werner. The case was removed to this Court on April 4, 2016. Defendant LTI contends that this Court lacks personal jurisdiction over it.

*Personal Jurisdiction 12(b)(2) Standard*

When confronted with a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv n'care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Importantly, however, "the plaintiff need not . . . establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices." *Id.* In determining whether a prima facie showing of personal jurisdiction has been made, the Court "must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *McFadin v. Gerber*, 587 F.3d 753, 758 (5th Cir. 2009) (quoting *Luv n'care*, 438 F.3d at 469).

*Discussion and Analysis*

A "federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 389 (5th Cir. 2009).

1. *Statutory Authority—The Lanham Act*

The causes of action alleged in this case include both a federal question claim and diversity of citizenship claims. Federal Rule of Civil Procedure 4 provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by federal statute." Fed. R. Civ. P. 4(k). "Absent a federal statute that provides more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits." *Submersible Sys. v. Perforadora Cent.*, 249 F.3d 413, 418 (5th Cir. 2001). Where the federal statute is silent in regards to service (as is the Lanham Act here) the Court will utilize the state's long-arm statute

to determine the defendant's amenability to jurisdiction. *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012). Thus, the Court applies the personal jurisdiction analysis used in diversity of citizenship cases to both the federal and state law claims.

2. *Statutory Authority—Mississippi Long Arm Statute*

The Mississippi Long-Arm Statue provides:

> Any nonresident . . . corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13–3–57. Although the Mississippi Long Arm Statute provides three avenues of establishing jurisdiction, the pertinent inquiry here exists under the "tort prong."

Werner argues that personal jurisdiction may be exercised over LTI based on various business torts LTI allegedly committed, including tortious interference with a contract. "It is without question that Mississippi recognizes a claim for tortious interference with a contract, which occurs when (1) the acts were intentional and willful; (2) they were calculated to cause damage to the plaintiff in his/her lawful business; (3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which acts constitute malice); (4) actual damage or loss resulted, and (5) the defendant's acts were the proximate cause of the loss or damage suffered by the plaintiff." *Alfonso v. Gulf Pub. Co., Inc.*, 87 So. 3d 1055, 1060 (Miss. 2012).

Under this claim, Werner alleges that LTI's actions were "intentional, willful, calculated to cause damages to Werner in its lawful business, to include causing parties contracting with Werner not to perform their contracts and to use the Morsey Defendants to provide in-house

services that were previously provided through Werner . . ." *See* Verified Compl. [2] at ¶ 80. Additionally, because of LTI's engagement of the Morsey Defendants, Werner contends that LTI "essentially stole one of Werner's customers that paid Werner more than 1.1 million dollars before LTI's wrongful and continued engagement of the Morsey Defendant. . . [and]. . . through Morsey, has obtained $400,000.00 in gross revenue from that one customer."

The Court finds Werner's allegations sufficient to establish a prima facie showing that a tortious interference with contract claim was committed, at least in part, in Mississippi because this is the state in which the alleged damage and loss occurred. "Under the tort prong of the Mississippi long-arm statue, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Unified Brands,* 868 F. Supp. 2d at 579 (*Allred v. Moore & Peterson,* 117 F.3d 278, 282 (5th Cir. 1997)). Although "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur," (*Jobe v. ATR Mktg.,* 87 F.3d 751, 753-54 (5th Cir. 1996)), the loss and damages alleged by Werner are not mere consequences of a tort having occurred elsewhere. In *Unified Brands*, a factually similar case heard in the Southern District of Mississippi, the court held that under a claim for tortious interference with a business relationship, a loss of profits and prospective contracts as well as a loss of income would necessarily occur in Mississippi as the principal place of business for the plaintiff corporation was Mississippi. 868 F. Supp. 2d at 579. (citing *Cenac v. Murry,* 609 So. 2d 1257, 1268 (Miss. 1992)). Thus it follows that the loss of profits, prospective contracts, and income that Werner alleges it suffered would occur in Mississippi as the state is home to Werner's principal place of business. Accordingly, the Court finds that Werner has made a prima facie showing that the tort

prong of the Mississippi Long-Arm Statute would provide for the exercise of personal jurisdiction over LTI on a tortious interference with contract claim.

*3. Constitutional Authority—Fourteenth Amendment*

The second step of the personal jurisdiction analysis considers whether the exercise of personal jurisdiction under state law would comport with the dictates of the Fourteenth Amendment Due Process Clause. To satisfy the Clause, there must be some act by which "(1) the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contact' with the state; and (2) the exercise of jurisdiction must not offend 'traditional notions of fair play and substantial justice.'" *Mullins*, 564 F.3d at 398.

"Jurisdiction may be general or specific." *Id.* (quoting *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008)). Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Id.* (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). In contrast, general jurisdiction requires the defendant to have maintained "continuous and systematic" contacts with the forum state. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). Here, minimum contacts are established pursuant to specific jurisdiction, and therefore, the Court does not address general jurisdiction.

When an intentional tort is alleged, jurisdiction is evaluated under the "effects" test. *Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). In applying *Calder*, the Fifth Circuit elaborated that "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident

defendant's conduct." *Mullins,* 564 F.3d at 386 (citing *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 628 (5th Cir. 1999)). In the context of an intentional interference with contract claim, the Court must determine "whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured contractual relationship." *Id.* at 401.

Here, the nexus between Mississippi and the alleged injured contractual relationship appears to be the Non-Solicitation Agreement that existed between Werner and the Morsey Defendants. It is undisputed that the Agreement is governed by Mississippi law.[1] It is also clear from the pleadings that LTI was aware that a contractual agreement existed between Werner and the Morsey defendants.[2] Accordingly, the Court finds that minimum contacts do exist and the cause of action arises from those contacts thereby establishing a prima facie showing of specific jurisdiction.

Having found Werner has made a prima facie showing that LTI is subject to personal jurisdiction under the tort prong of the Mississippi Long Arm Statute and that sufficient contacts exist to satisfy the Fourteenth Amendment Due Process requirement, the Court next considers whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398. The burden of showing unreasonableness must be carried by the party challenging personal jurisdiction, and that party must make a "compelling case" against its being exercised. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). To determine whether the exercise of personal jurisdiction would be unreasonable, the Court balances "the burden on the defendant having to litigate in the forum; the forum state's

---

[1] The Non-Solicitation Agreement signed by Perry Morsey includes the provision that "This Non-Solicitation Agreement shall be construed in accordance with Mississippi law."
[2] Werner sent notification via certified mail to LTI regarding the existence of the Non-Solicitation Agreement. The record also includes various email correspondences between Werner and LTI executives discussing the Morsey Non-Solicitation Agreement.

interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Id.*

LTI argues that the burden of ligating this claim in Mississippi would be significant to LTI because LTI is located solely in Michigan and operates its business there, the alleged claims took place outside of Mississippi, and other forums are available for Werner to obtain relief. The Court finds these factors do not outweigh the remaining elements in favor of jurisdiction. Mississippi would have a significant interest in adjudicating this case as it is alleged that LTI tortiously interfered with a business within Mississippi's borders. Werner has an interest in litigating in Mississippi as Werner's principal place of business is housed in the state, and Mississippi provides the law governing the contractual agreement with the Morsey Defendants. Additionally, there are no issues implicating interests of the interstate judicial systems or the furthering of social policies. After balancing the factors, the Court finds the exercise of personal jurisdiction over LTI would not be unreasonable, and the requirements and considerations of the Fourteenth Amendment Due Process Clause are satisfied.

*Conclusion*

Accordingly, LTI's Motion to Dismiss for Lack of Personal Jurisdiction [16] is DENIED. At this stage of the proceedings, this Court's exercise of personal jurisdiction over LTI is appropriate.

SO ORDERED on this, the 5th day of August, 2016.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**